## WEST OHIO GAS CO. v. PUBLIC UTILITIES COMMISSION OF OHIO et al.

### No. 874.

District Court, N. D. Ohio, W. D.
June 8, 1928.

Goeke, Parmenter & Reid, of Lima, Ohio, F. L. Daily, of Chicago, Ill., and H. O. Bentley and J. H. Goeke, both of Lima, Ohio, for plaintiff.

Edward C. Turner, Atty. Gen. of Ohio, L. B. Brown, of Kenton, Ohio, Albert M. Calland, of Columbus, Ohio, and George W. Ritter, of Toledo, Ohio, for respondents.

Before DENISON, Circuit Judge, and KILLITS and SIMONS, District Judges.

KILLITS, District Judge.

This matter is before the court on a petition for a temporary injunction restraining the defendants from enforcing rates of service, established by the defendant Public Utilities Commission of Ohio, for natural gas to plaintiff's customers in the village of Kenton, hereinafter called the village. The action is grounded on the theory that the order by the Public Utilities Commission, hereinafter called the commission, is unfair, and that its enforcement would be in violation of the Fourteenth Amendment to the Federal Constitution, in that there would be a taking of plaintiff's property without just compensation, an appropriation of plaintiff's property without due process of law, and a denial to plaintiff of the equal protection of the laws.

There is no controversy respecting the facts stated in the positively verified complaint. The defendants do not answer. No testimony was offered except that which was under consideration by the commission at the hearing resulting in the order complained of, and whatever competent testimony was there heard was undisputed. The plaintiff is a retail distributor of natural gas to the village of Kenton and to several other communities nearby, including the city of Lima, county seat of Auglaize county. The plaintiff buys its gas from the Ohio Public Service Company, hereinafter called the service company, a wholesaler, through a connection with the latter's trunk service line at a point about fifteen miles east of the village of Kenton; thence conveyed by plaintiff's private lines to places of distribution.

Effective January 21, 1926, for three years, plaintiff made a contract with the service company for natural gas, delivered at connection referred to, at the rate of 55 cents per thousand cubic feet; and, based upon this contract, plaintiff filed, in July, 1926, with the commission, rate schedules for retail service in the village, the operation of which was suspended for 120 days, under the Ohio law, Gen. Code, § 528 (113 Ohio Laws, p. 79), during which time a protest was filed with the commission by the village, and by an organization of citizens therein, the defendant Kiwanis Club. This protest brought a hearing before the commission in which was had a consideration of the valuation of plaintiff's plant in the village. In December, 1926, the commission found a tentative valuation of plaintiff's investment in the village at $182,000. This valuation subsequently became permanent because no protest was made thereto; and the same was thereafter regarded by the commission as established as an element upon which to fix reasonable rates. In January, 1927, the commission found plaintiff's schedules, so filed, to be reasonable, with a minor modification, and issued

an order permitting same to be enforced by the plaintiff. Within the thirty days thereafter allowed by law for the filing of a motion for rehearing by the village protestants, the personnel of the commission changed, and such a motion was also filed. The reorganized commission granted a rehearing only as to the schedules of rates, and the case, as so reopened, was heard in December. March 1, 1928, the commission, by a majority finding, modified the schedules and established the rates now complained of. A motion for rehearing by plaintiff having been denied by the commission, the case before us was begun. To this time the plaintiff has been collecting, under bond, the rates by it proposed and rejected by the commission.

We have for our consideration at this hearing the competent testimony adduced before the commission at both hearings, and the report and findings of the commission. The evidence before the commission and before us is clear, in fact it is not disputed, that the schedules proposed by the commission, the enforcement of which is sought to be enjoined in this proceeding, will not only fail to afford plaintiff with any return upon its investment, but may not even produce revenue enough to pay operating expenses, including reasonable maintenance, provided the service company holds plaintiff to its contract for gas at wholesale, which contract continues in force throughout 1928. The order complained of also requires plaintiff to distribute to consumers, under its bond, excess collections heretofore made under its schedules filed in 1926, superseded by the commission's order. These are shown to be in so large an amount as to cause a very serious burden upon the plaintiff's finances, should a return be finally compelled.

■ The commission, examining its own records, found that the rate of 55 cents per thousand cubic feet, contracted by plaintiff to be paid for natural gas at wholesale, was unreasonable and excessive in comparison with wholesale rates obtained by other gas companies in various cities and villages of Ohio by contract with wholesale distributors of natural gas. It held that the plaintiff should and might have obtained gas at wholesale at a price not exceeding 29¾ cents a thousand cubic feet, the maximum wholesale price by the commission found, in the manner stated, to be now paid by any other gas company in the state distributing to consumers at retail; and it fixed schedules for distribution in the village by the plaintiff, complained of in this action, upon the theory that plaintiff should

have, and reasonably might have, contracted at this rate when it made the contract in question with the service company. The use by the commission of its files of schedules of other companies within the state as evidence supporting its present action was not brought about in the formal way by the introduction of the same in evidence at the time of the hearing of protests, but simply by taking notice thereof as a matter of public record, with no opportunity to the plaintiff either to be heard respecting them, or to introduce testimony respecting their nonapplicability to the situation confronting the plaintiff in securing gas for its service in the village. The schedules so referred to by the commission are not brought into this record, nor could they, under the circumstances of the hearing, be brought to our attention; for it is established that the commission might not base its conclusions upon its files and other general information, unless the same were put in evidence in the particular proceeding, and opportunity given to the plaintiff to meet and explain them. The question is fully considered by a three judge court in this circuit, in Illinois Central Railroad Co. v. Railroad Commission of Kentucky et al., 1 F.(2d) 805, 806, citing decisions of the Supreme Court of the United States on that subject, and we are constrained to follow its conclusions.

■ For the purposes of this hearing, we may take notice of the extent of territory within the boundaries of the state of Ohio, and generally of the location of important cities and county seats therein; and the acceptable evidence also enlightens us respecting the difficulties to which service corporations are subject in securing gas for distribution at retail to their several localities; wherefrom it is plain that a wholesale rate enjoyed by a service company in one part of the state might not be obtainable by a like company in another section. Factors, such as convenient access to wholesale pipe lines, extent of demand dependent upon number of retail consumers, expense necessary to the particular service company to lay its own lines to a wholesale pipe line, aggregate production of natural gas within the state or introduced from without, available for service throughout the state, and others which readily come to mind, may vitally affect the merits of the particular situation. The commission, as shown by the evidence before us, examined several witnesses on this subject. Their testimony was to the effect that the plaintiff could not, under the circumstances controlling it, have obtained from any avail-

able source a better wholesale rate than 55 cents; that it was obliged to accept the demand of the service company for that rate with the sole alternative of the construction of an extended line of its own, at a prohibitive outlay, to reach the wholesale service of some other company, whose rates might be lower; that nowhere within reason was there to be found a reasonably available source of supply of surplus gas above that already contracted for by customers of any other wholesale company within the Ohio field.

█ This testimony was not contradicted, nor does it present the appearance of unreasonableness. There is no reasonable suggestion in the record of collusion between the service company and plaintiff in the making of the 55-cent wholesale rate now in force. On the contrary, the unimpeachable evidence is to the effect that the rate was, by circumstances beyond plaintiff's control, forced upon it. It is manifest, therefore, that, unless relieved by this action, plaintiff is between the apparently impossible alternatives, either to denounce a binding contract and be without gas, or to carry on at a destructive loss. We are forced, therefore, to conclude that the commission's finding upon this testimony that plaintiff was not reasonably diligent in seeking for the benefit of its retail customers a lower wholesale contract rate, and that it might have found and could yet find gas sufficient for the consumption of its service at a rate under 30 cents per thousand, is mere speculation. The state of the competent record consequently leaves this court with no other reasonable conclusion than that the plaintiff is bound by its contract with the service company, and that the commission's order requiring it to denounce that contract, and to obtain elsewhere gas at a wholesale rate sufficiently low to enable it to maintain itself with a reasonable return upon its investment, using the schedules directed by the commission, is arbitrary and unreasonable and in violation of the rights conferred upon it by the Constitution of the United States and by law.

We do not overlook the hardship suffered by the village, if it is true that by reason of a practical monopoly the service company is able to and does indirectly force the village to pay a price which, under all the pertinent circumstances, is extortionate; but the remedy is not to compel the helpless distributor, such as the evidence tends to show the plaintiff to be, to suffer a loss. If the constitutional laws of Ohio will permit, some direct proceeding may require the appropriate wholesaler to furnish gas to the service company at what the commission thinks a reasonable price. If they do not so permit, the remedy must be sought in the Legislature.

A temporary injunction, as prayed for, is ordered.